UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Case No. 00-6162-Cr-Roettger /Snow

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BERNARD SMITH,

    Defendant.
_____/



## MOVANT BERNARD SMITH'S
## PETITION FOR ATTORNEY'S FEES PURSUANT TO
## THE HYDE AMENDMENT AND 18 U.S.C. 3006A[1]

**COMES NOW**, Movant, BERNARD SMITH ("BERNARD"), by and through his undersigned counsel and respectfully files this his Petition for Attorney's Fees pursuant to the Hyde Amendment and 18 U.S.C. 3006A, and in support thereof, he states as follows:

### A. PROCEDURAL HISTORY

1. In the summer of 2000, Bernard was arrested and indicted with Conspiracy to Possess with Intent to Distribute Cocaine in violation of Title 21 U.S.C. §846.

2. Due to the seriousness of the charges brought against him, it was necessary for Bernard to hire an attorney to represent him in this cause.

---

[1] We respectfully request that this matter not be referred to the assigned U.S. Magistrate Judge simply because the District Court Judge is in the very best position to adjudicate the motion, having presided over the recent trial itself. We also note that the Hyde Amendment does not mandate a hearing.

1

3.  Immediately after his arrest, Bernard retained the law offices of the undersigned in order to defend him in this case.

4.  On September 27, 2001, the jury acquitted Bernard (and five other co-defendants) after less than one hour of deliberations following almost four weeks of trial.[2]

## B. FACTS

Local law enforcement authorities in Broward County began investigating Bernard in about 1996 or 1997. Following this, the FBI took over the investigation in about 1997 or 1998, through FBI Special Agents Andrew Thompson ("FBI S/A Thompson") and Thomas Harvey ("FBI S/A Harvey"), with the continued assistance of "the locals". The investigation concentrated when the FBI signed up an informant by the name of Ansel Pratt. Essentially, Ansel Pratt lived and/or worked in the neighborhood where Bernard and several other black males[3] would work and/or simply hang out. Ansel Pratt apparently told the FBI that one or more of these people were involved in significant cocaine trafficking which eminated primarily through a commercial warehouse located at 550 N.W. 27th Avenue in Ft. Lauderdale, Florida ("the Smith warehouse"). The Smith warehouse was leased by Cecil Smith, one of Bernard's brothers.[4]

The FBI put Ansel Pratt on a $2,500.00 a month payroll and he was able to secure a lease for a warehouse directly next to the Smith warehouse which was then under investigation. Ansel Pratt operated his business (selling used furniture, used home electronics and illegal TV cable descrambler devices) from this warehouse, while, at the

---

[2] Although the trial took four weeks, in actuality, there were about thirteen or fourteen "full" trial days.
[3] Referred to by FBI S/A Thompson as the "do-boys".
[4] The Smith warehouse offered TV, a pool table, sodas, beer, snacks and car washes as well as car care amenities.

2

same time, being the eyes and ears of the FBI, to whom he reported on a very frequent basis.

The FBI beefed up its investigation in 1999 by using the most invasive of law enforcement techniques. They obtained wire tap orders on the cellular phones of Barry Smith, Bernard and the Smith warehouse "hard line". With court order, they even introduced a secretly hidden listening device inside the Smith warehouse which allowed continuous and liberal listening to anything said within. They also fixed a secretly hidden pole camera directly across the Smith warehouse, which ran from early morning until dark, videotaping that precise location in a stationary manner over a period of several months. During an almost two year period, Ansel Pratt provided periodic information regarding his "alleged" close-up observations of "significant amounts of drugs" (cocaine, marijuana and crack) and/or drug money "being delivered and/or counted", primarily at or within the Smith warehouse. Despite his immediate reporting of same on over twenty occasions for almost two years and law enforcement's proximity to the location(s) of such activity, no drugs or money whatsoever was ever seized by law enforcement.[5]

When they finally realized they had no hard evidence, despite 9000 intercepted telephone calls, 138 surveillance videos, and a "very credible" Ansel Pratt, FBI S/A Thompson and FBI S/A Harvey decided to make a "cold approach" to Barry Smith and Bernard, on September 24, 1999.[6] The government invited Barry Smith to "talk to us". Of course, they never gave him Miranda warnings, even though he was clearly their

---

[5] The government was unable to convincingly explain and/or justify this failure or lack of corroboration.
[6] In the traditional "late Friday afternoon" style law enforcement gives people so they have the least possible chance of getting a lawyer. And, in this case, the agents knew the Smith brothers had a lawyer

"main target". Out of curiosity, concern, or both, Barry Smith contacted FBI S/A Thompson and met with him on two or three occasions. The last meeting was at the U.S. Attorney's Office, in the presence of AUSA Kathleen Rice, AUSA Teresa Van Vleiet, FBI S/A Thompson and FBI S/A Harvey. During this meeting, Barry was lied to when he was told that if he did not cooperate he would be indicted three days later.[7] This was because the government knew it had no case against Barry Smith or Bernard.[8] In this meeting, Barry Smith told the agents and prosecutors that his brother was represented by Rick Diaz and suggested that he had sought advice from him as well. According to Barry Smith, FBI S/A Thompson and AUSA Kathleen Rice said "he just walks around in fancy suits and suspenders, he'll just take your money, Bernard's money, you guys don't attorneys," in an effort to dissuade Barry Smith and Bernard not to have counsel (in Barry Smith's case) and fire counsel (in Bernard's case).

### Pretrial Detention – "Keep Bernard in jail pretrial"

Once indicted and arrested in the summer of 2000, the government fought hard to pretrial detain Bernard. Now, after the trial, it is clear that the government significantly overstated the strength of its case to US Magistrate Judge Laurana Snow. A copy of the detention hearing transcript is attached as Exhibit "A". (See pages 4-11).

### (i) First Overstatement

Representation. "There are records pertaining to a seizure of $63,000.00 which constitutes drug proceeds in sometime" pp.6. The truth -the government *never* produced any such records in Rule 16 discovery or at trial.

---

because it was revealed on the wiretap tapes that day to the agents. See, call number 3739 on September 24, 1999.
[7] In fact, he was not indicted until about nine months later.

4

### (ii) Second Overstatement

<u>Representation</u>. "On numerous occasions, Barry Smith has been observed disbursing large quantities of cash believed to be drug proceeds. He has been interpreted on a number of wiretap communications, as have Bernard and Sam Jones." Pp.7. <u>The truth</u> - While Ansel Pratt may have said that, the "message" the government's proffer sends was that the telephone conversations revealed such involvement with large quantities of drug proceeds. Not true.

### (iii)Third Overstatement

<u>Representation</u>. "It is believed that Bernard and Willie Walker coordinate the delivery of cocaine, often times through the use of tractor trailer trucks associated either with L&W Trucking or B&B Trucking, thereby further insulating the cocaine from detection by making sure that it's not being transported by individual couriers." Pp. 8. <u>The truth</u> – the trial evidence revealed that none of the tractor trailer trucks were *ever* used to transport drugs – nor that Bernard and Willie Walker ever coordinated the delivery of any cocaine.

### (iv) Fourth Overstatement

<u>Representation</u>. " As I said, Bernard Smith has also been intercepted on the wire a number of times.: <u>The truth</u> "But we really don't have him saying anything incriminating."

---

[8] During this nine month period, the government attempted to "flip" other individuals in order to bolster its case against the Smith brothers.

### Discovery – "Hide the witnesses"

The government sought an early protective order (ex-parte) from certain discovery which was granted and which significantly hindered the defense in this case.[9] Now, after the trial, it is abundantly clear the government did this in bad faith at least with regards to Michael Haynes, Timothy Wimberly (if that is who he really is!) and Jose Reyes. These three witnesses were in the Federal Bureau of Prisons when this indictment was returned, and were therefore, in absolutely *no* danger whatsoever. There was simply no good faith basis to protect their identity from disclosure. It merely gave the government an (unfair) advantage.[10]

### Polygraph – "Ignore the possibility or probability that Bernard is innocent"

Bernard submitted to a polygraph examination which he passed. The government did not want to hear about it, when it received a copy of the report. Although, *legally*, the government had every right to oppose its admissibility, it should have caused the prosecutor to "second guess" her case against Bernard.

### Plea Negotiations – "Let's not treat all defendants equally"

Bernard always asserted his actual innocence. Nevertheless, undersigned counsel wished to explore with the government an alternative resolution to trial. Without going into specifics, it is sufficient to say that the government offered significantly more attractive plea agreements to Sam Jones and Earl Parker than to Bernard. To be clear, *had* the government offered similar plea agreements to Bernard, Bernard was not willing to plead guilty to a drug trafficking offense, a crime that he did not commit. But, the

---

[9] Particularly, anything that would reveal the identity of any of its "cooperating witnesses."
[10] If this Court recalls, this required an order from the court at a status conference and an order directing the government to immediately produce all discovery on these witnesses on the eve of the trial.

point is, that the disparity of the deals offered to equally or more culpable co-defendants demonstrates the government's "vexatiousness" towards Bernard.

### Trial – "the truth revealed"

At trial, it became clear that the government's case was far weaker than originally anticipated. Government agents guessed about their "interpretation" of taped telephone conversations in evidence by using their imagination rather than their objectivity. Ansel Pratt was proven to be motivated for money and for spite – something the FBI and the government should have detected long ago. Ansel Pratt was proven to be a liar at trial under the cross-examination by various defense counsel. He committed perjury at trial when he swore that on May 7, 1999, he personally witnessed the use of a "black container" to transport 33 kilos of cocaine from the Smith warehouse to an Opa-Locka residence. After the prosecutor had him identify the container with 33 kilos of cocaine for the jury during the trial (on a May 7, 1999 videotape), such container was conclusively proven to be nothing more than the innocent use of a vacuum cleaner at a car wash, (not a container with *any* cocaine) as sworn to by not only Ansel Pratt, but by FBI S/A Thompson.

### Post Trial Comments by Prosecutor

Following the devastating loss, rather than just "move on", the government has apparently expressed its intent in going after Bernard again. If our confidential source is accurate, and if we obtain recorded telephone conversation(s) from FDC Miami between Michael Haynes and AUSA Kathleen Rice, the conversation will speak for itself.[11] This kind of attitude is crystal clear evidence of vexatiousness.

---

[11] We must not forget the unsuccessful federal prosecution of Bernard Smith in 1990, when, Bernard Smith, through the use of the best voice print analyst in the country, conclusively proved that it was not his voice

7

## C. MEMORANDUM OF LAW

The Hyde Amendment, under 18 U.S.C. 3006A, allows criminal defendants to recover from the government all "reasonable attorney's fees and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust". See also, U.S. V. Gilbert, 198 F. 3d 1293 (11th Cir. 1999).

## D. ARGUMENT/ANALYSIS

The government's prosecution of Bernard was frivolous and unfounded. The government prosecuted him at the very worst, through malice, or, at the very best, to harass or annoy him. Sadly, the government relied exclusively on Ansel Pratt to commence its investigation, never polygraphed him, never "second guessed" him in a meaningful way, and never "tested his credibility" in a meaningful way. The government never looked objectively at its case, but rather concluded that Bernard was a drug trafficker and then tried to corroborate this with questionable and weak evidence which proved to be 100% unsuccessful.

The government viciously attempted to pretrial detain Bernard by overstating the weight of its evidence against him. Bernard Smith showed up for trial. He never was a flight risk or a danger to the community.

Nine Thousand (9000) telephone calls intercepted – not one talk about drugs either clearly, or in code. The government introduced about a dozen of these calls at trial, which, were presumably its "greatest hits". They were nothing short of embarrassingly

---

on the (only) three undercover recorded taped conversations as evidence against him – resulting in the "dismissal – during –trial – of the indictment against him (in this district).

non-incriminating in nature. Try as it did, time and time again, to read a sinister meaning into several of the taped conversations, the government failed miserably at its effort.

For example, in one conversation, Barry Smith told his uncle (and co-defendant), Willie Walker, to write him a check for "nine something". In a total reckless manner, FBI S/A Thompson testified that he was convinced that this meant $9,500.00, that it was evidence of money laundering (because of the $10,000.00 cash threshhold reporting requirement). Willie Walker's corporate bank records[12] proved that the check was for $965.00. Despite his vast subpoena power, (with or without the grand jury process), FBI S/A Thompson did absolutely nothing to subpoena Willie Walker's corporate bank statement for the single relevant month of that telephone-tape conversation, to see, whether, in fact, Willie Walker had written a check to Barry Smith for $9,500.00. This process would have clearly proven his assumption was wrong. Of course, FBI S/A Thompson had to anticipate that there always was a risk that the subpoenaed records might show his opinion to be wrong. Better give an incriminating, (albeit perhaps mistaken), opinion to secure a conviction, than let the truth be known. It is as sad and simple as that. Without a doubt, *but for* FBI S/A Thompson's reckless disregard for the truth, Willie Walker would *never* have been indicted.

The same "misread" occurred with an intercepted telephone conversation between Bernard and Alex Rainey. Rainey said he was bringing Bernard "clothes". The government said, "clothes" meant drug money. Alex Rainey, despite being local and available, was never contacted by the FBI to corroborate his "opinion". He was *never* called to testify at the trial. Alex Rainey was not an indicted coconspirator, he was not a paid informant and he was not doing thirty years in jail seeking a sentence reduction.

The reality is that, the government had nothing to threaten or bribe Alex Rainey with, and was fearful that his testimony would have been that when Alex Rainey said clothes – he meant clothes, not drug money. Again, no effort by the FBI to investigate and discover what the truth really was regarding that telephone conversation. To not do that simple cross reference, was nothing short of reckless.

One hundred and thirty eight (138) videotapes – not one showed a drug transaction. Unknown hours of "room-bug" surveillance over a period of several months – nothing, not a single incriminating conversation – not one!

Another example of the government's vexatiousness was the manner in which AUSA Kathleen Rice cross-examined defense witness, Jim Passiatore, the manager of the warehouse complex where the Smith warehouse was located. This old man, (never before a convicted felon), is a World War II Veteran, a respectable property owner and business man. With no basis whatsoever, Mr. Passiatore was viciously accused by AUSA Rice of having knowingly allowed Barry Smith and Bernard to traffic drugs in the Smith warehouse he managed, and, with even more invective, was then accused of being involved in a marijuana hydroponic grow operation. There was absolutely no good faith basis for that questioning.

Yet another example of the government's malicious prosecution, is the government's accusation of Carcorp being involved in money laundering with Raymond Hicks – again with no good faith basis for same. Another reckless attempt to discredit an honest business man.

In short, this prosecution lacked objectivity and leadership. Ansel Pratt was its leader, followed by a blinded group of government agents and non-objective prosecutors.

---

[12] Introduced by Willie Walker.

This was a non-justifiable prosecution, the exact type of scenario justifying Hyde Amendment attorney's fees.

Hopefully, this Court will grant same – so the next time, before the FBI spends hundreds of thousands of tax dollars – dedicates thousands of man hours – deprives six people of their freedom – ignores polygraph evidence – fails to look at its case objectively, -it will think twice. Maybee, just maybe, other innocent citizens will be spared the irreparable harm inflicted on Bernard and his co-defendants.

The jury deliberation of less than one hour – acquitting all six defendants of all counts – speaks for itself and, speaks volumes.

### E. REQUEST FOR HEARING

We respectfully request a hearing on this matter. We believe an evidentiary hearing is necessary.

### F. CONCLUSION

For the foregoing reasons, Bernard Smith seeks an award of attorney's fees. If and when entitlement is established, Bernard Smith will submit a subsequent pleading and affidavit for a determination on the amount of fees requested.

### LOCAL RULE 88.9

Undersigned counsel left a voicemail message with AUSA Kathleen Rice to learn of her position on this petition. We have not learned of her position as of the filing of this petition one week thereafter.

WHEREFORE, the undersigned respectfully requests that this Honorable Court grant the relief requested herein.

Respectfully submitted,

Richard J. Diaz, Esq.
Richard J. Diaz, P.A.
2701 S.W. 3rd Avenue
Miami, FL 33129
Telephone: (305) 285-1122
Facsimile: (305) 285-0354
F.B.N. 183008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 11th day of October, 2001 to AUSA Kathleen Rice, 299 east Broward Blvd, Ft. Lauderdale, FL 33301.

Richard J. Diaz, Esq.