UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6162-CR-ROETTGER/SNOW

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| BERNARD SMITH, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**NIGHT BOX FILED**
OCT 26 2001
CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

**GOVERNMENT'S RESPONSE TO DEFENDANT'S PETITION
FOR ATTORNEY'S FEES PURSUANT TO THE HYDE AMENDMENT**

COMES NOW, the United States of America, by and through the undersigned Assistant United States Attorney, and files its response in opposition to the Defendant, Bernard Smith's petition for attorney's fees pursuant to the Hyde Amendment and 18 U.S.C. § 3006A, and states as follows:

1. On June 15, 2000, a five count indictment was returned by a Federal Grand Jury in the Southern District of Florida charging eight individuals, including Defendant Bernard Smith, with narcotics violations. Defendant Smith was charged in Count One of the indictment which count alleged that from December 1996 through September 1999, Defendant Smith conspired with seven other individuals and with persons known and unknown to the Grand Jury to possess with intent to distribute cocaine, in violation of Title 21, United States Code, Section 846.

2. On August 27, 2001, a jury trial commenced as to defendant Bernard Smith and five co-defendants. Codefendants Sam Jones and Earl Parker had previously plead guilty to charges



in the indictment and are awaiting sentencing by this Court. Codefendant Jones testified for the Government at trial.

3. On September 26, 2001, the jury returned a verdict of not guilty as to each one of the six defendants on trial.

4. On October 11, 2001, the defendant Bernard Smith filed the instant Petition wherein he seeks attorney's fees and costs on the basis that the government's prosecution was frivolous under the Hyde Amendment.

5. The defendant's petition should be denied as the defendant cannot meet the rigorous standard imposed under the Hyde Amendment as he has not and cannot establish that the government's prosecution was vexatious, frivolous or in bad faith as required under Title 18, United States Code, Section 3006A.

## MEMORANDUM OF LAW

The Hyde Amendment allows for the recovery of a reasonable attorney's fee and litigation costs where a defendant in a criminal case establishes "that the position of the United States was vexatious, frivolous, or in bad faith." 18 U.S.C. § 3006A. To determine whether or not to award fees and costs under this section, the court, for good cause shown, may receive evidence ex parte and in camera (which shall include the submission of classified evidence or evidence that reveals or might reveal the identity of an informant or undercover agent or matters occurring before a grand jury) and evidence or testimony so received shall be kept under seal.

Courts have interpreted the term "vexatious" to mean "without reasonable or probable cause or excuse." *See United States v. Gilbert*, 198 F.3d 1293, 1298 (11th Cir. 1999) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648

(1978) (describing "vexatious" conduct in the Title VII context as being "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith")).

The Eleventh Circuit in *Gilbert* described a "frivolous action" as one that is "[g]roundless ... with little prospect of success; often brought to embarrass or annoy the defendant." *Id.* at 1299. The court also defined the term "bad faith" to be "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will." *Id.* (citing *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978) (defining bad faith in the law enforcement context to include "reckless disregard for the truth")).

Thus, under the Hyde Amendment, more is required of the defendant than simply proving that he prevailed at the pretrial, trial or appellate stages of the prosecution. Indeed, even a defendant whose motion for judgment of acquittal is granted must meet the stringent burden under the Hyde Amendment. *See United States v. Reyes*, 16 F.Supp.2d 759 (S.D. TX 1998). Rather, he "must show that the government's position underlying the prosecution amounts to prosecutorial misconduct--a prosecution brought vexatiously, in bad faith, or so utterly without foundation in law or fact as to be frivolous." *Gilbert*, 198 F.3d at 1299. As the Court in *Gilbert* noted:

> **In prosecuting crime, government attorneys are entitled to be zealous advocates of the law on behalf of their client, the people of the United States . . . the original wording of [the Hyde Amendment] was modified during the legislative process in order to prevent it from having a chilling effect on legitimate prosecutions, even those which ultimately result in acquittals. Even in its earliest form, the Hyde Amendment was targeted at prosecutorial misconduct, not prosecutorial mistake. Representative Hyde spoke in terms of the**

> government "keep[ing] information from [the defendant] that the law says [the government] must disclose," " hid[ing] information," "not disclos [ing] exculpatory information," and "suborn[ing] perjury"--all clear examples of prosecutorial misconduct. 143 Cong. Rec. H7786-04, H7791 (Sept. 24, 1997). The changes to the amendment in the Conference Committee illustrate Congress' intent to limit its scope. **The substitution of the narrower language of "vexatious, frivolous, or in bad faith" in place of the broader language about lack of substantial justification, the removal of the phrase "without foundation," and the shifting of the burden of proof to the movant all show that Congress meant to sanction and deter prosecutorial misconduct, not prosecutorial zealousness per se.** See generally United States v. Ranger Electronic Communications, Inc., 22 F.Supp.2d 667 (W.D.Mich.1998) (holding that violation of Brady doctrine was example of bad faith justifying award of fees under the Hyde Amendment).

*Gilbert*, 198 F.3d at 1303-04 (emphasis supplied).

## DISCUSSION

The indictment in this case charged defendant Bernard Smith and seven codefendants with conspiracy to possess with intent to distribute cocaine in violation of Title 21, United States Code, Section 846. The prosecution was premised on wiretap conversations among various defendants and unindicted coconspirators, information obtained from a confidential source and cooperating witnesses and defendants and upon law enforcement surveillance. Defendant Smith erroneously states that there were several months of roombug surveillance. This is inaccurate as the roombug was in position for approximately one month at the close of the investigation of the warehouse. The evidence introduced at trial against defendant Bernard Smith included wiretap conversations between Bernard Smith and Sam Jones, conversations between Bernard Smith and codefendant Willie Walker and a conversation between Bernard Smith and Alex Rainey. There were also a number of telephone calls which were either referenced or introduced at trial pertaining to Bernard Smith's utilization of law enforcement officers in furtherance of personal

endeavors and to the ownership of significant assets. Indeed, defendant Smith acknowledged using law enforcement for personal favors and provided the names of those law enforcement personnel during his cross-examination. Interestingly, defendant Smith failed to address the merits of any of these conversations in his petition. In addition to the wiretap evidence, there was also testimony by the confidential source, cooperating witnesses and codefendants which demonstrated Bernard Smith's involvement in drug distribution activities in North Carolina, Ocala, Florida and Fort Lauderdale, Florida. While the defendant asserts that the testimony was not credible, one cannot ignore the fact that the testimony of each individual was corroborated by other individuals and by the telephone communications. This corroboration supports the government's good faith basis in bringing this prosecution.

During trial, the Court twice denied the defendant's Rule 29 motions made after the government's case in chief and at the end of the entire case. That the Court determined, after hearing such evidence against the defendant and the defendant's own testimony, that there remained questions of fact for the jury and did not dismiss the government's case as a matter of law belies the defendant's claim that the government's prosecution was "vexatious, frivolous or in bad faith." *See Gilbert,* 198 F.3d at 1304 ("Once a district court judge accepts the government's legal position it will be extremely difficult to persuade us that the issue was not debatable among reasonable lawyers and jurists, i.e., that it was frivolous."). The government submits that the Court's decision to deny the Rule 29 motion at the close of all the evidence was made easier by the defendant's own testimony. Defendant Smith repeatedly contradicted himself and changed his testimony. For instance, his testimony changed from direct examination to cross-examination with respect to the number of routes that he ran from Hollywood to

Jacksonville and when he ran them. If the prosecution was so vexatious, frivolous and in bad faith, then why was there any need for Bernard Smith to contradict himself and mislead the jury?

In his petition for fees, defendant Smith ignores the very explicit and incriminating wiretap conversation between himself and codefendant Sam Jones in which the two discuss who could be informing law enforcement about their drug activities (Govt Ex. 7/7a). This conversation occurred after Barry Smith met with Special Agents Thompson and Harvey on September 24, 1999. Codefendant Jones testified in detail that this call pertained to the drug activities of Barry and Bernard Smith, Sam Jones and others. It is revealing that in this call, defendant Smith advised Jones that his lawyer told him the week before that Michael Haynes was informing law enforcement about their activities. If the government was so reckless in prosecuting Bernard Smith, then why was he contacting an attorney prior to any overt activity by law enforcement to find out what the police knew? Indeed, while there are other telephone calls that were intercepted which the government elected not to play, these telephone calls further exhibit the fact that the Smith brothers were involved in drug activity and were making extraordinary efforts to find out who was informing on them. Defense counsel was provided with all of the intercepted calls in discovery.

Michael Haynes, who also testified for the government at trial, is mentioned several more times in Government's Exhibit 7/7a. Sam Jones told Bernard Smith that Michael Haynes (who was incarcerated during the latter part of the conspiracy) didn't know about "that route" that "we run." Jones testified that he was referring to the drug activities of himself and the Smith brothers.

Jones further testified about the background of a conversation between unindicted

6

coconspirator Alex Rainey and defendant Bernard Smith in which Rainey tells Smith that Sam Jones gave Rainey some "clothes" to give to Bernard. Jones testified that the term "clothes" in this call and in other calls referred to drug money. During his own testimony, defendant Bernard Smith offered his own explanation - that the term "clothes" referred to rapper-designed clothes that Sam Jones was sending to Bernard Smith in place of $250 which Bernard had expected. That Bernard Smith provided a different (and, the government would submit, implausible) explanation for the telephone call does not mandate the conclusion that the government's interpretation was frivolous or in bad faith. In his petition, defendant Smith claims that the fact that the government did not call Rainey to testify about the call demonstrates the government's bad faith and "recklessness." This claim is meritless. Codefendant Jones knew what he himself gave to Rainey to give to Bernard Smith. Jones explained the background of the call. There was nothing "reckless" about the government's decision to not call Rainey as a witness - it simply made sense to have the person who was sending the drug proceeds to Bernard Smith explain that that was in fact had been sent. It is interesting to note, also, that codefendant Barry Smith testified that the term "clothes" meant money, but just not drug money. Even the defendant's own brother agreed in part with the government's interpretation.

  The defendant claims that the government lied to Barry Smith when they told him he would be indicted in three days. The defendant also claims that the government, in particular Special Agent Andrew Thompson and the undersigned, attempted to dissuade Barry and Bernard Smith from obtaining counsel. These claims are totally baseless and lack any foundation in the record before the Court. They are simply designed to divert attention from the sole issue before the Court: whether the prosecution in this case was vexatious, frivolous and in bad faith. Indeed,

it is logical to assume that had the government acted improperly with respect to the issue of right to counsel, defense counsel would certainly have raised such impropriety prior to trial. In fact, at no time throughout this litigation has there been any complaint by any defendant that the government acted in bad faith or in an unethical or improper manner.

The government is also puzzled by the statement that, "but for FBI S/A Thompson's reckless disregard for the truth, Willie Walker would never have been indicted." First, Willie Walker's status as a defendant in this case is irrelevant to Bernard Smith's petition. Second, as defense counsel well knows, there is no minimum threshold amount for money laundering - thus, whether the check which formed the basis for Count Three was for $965 or $9,650 is immaterial; it is the conduct, not the amount that is relevant. Third, had Willie Walker and L&W Trucking complied with the Federal Grand Jury subpoena and not waited until during trial to produce their checks, perhaps the government would have been in a position to subpoena further bank account records. As it was, these documents were not produced in a timely manner. In short, the defendant's assertion is entirely without merit.

The defendant states in his petition that the government has "expressed its intent in going after Bernard again." In support thereof, the defendant claims that there are recorded telephone conversations from FDC Miami between Michael Haynes and the undersigned. The government is completely bewildered by these false and baseless assertions. First of all, the undersigned has never engaged in any telephone conversation with Mr. Haynes. Second, the undersigned has not spoken with Mr. Haynes since approximately one week before trial. In making this statement, the defendant implies that the prosecutor is acting on some personal vendetta against the Smith brothers. This is nothing short of ridiculous. Given the wealth of criminal activity in the

Southern District of Florida, the undersigned simply has better things to do than to try to "hound" Bernard Smith.

With respect to the government's effort to obtain pre-trial detention for the defendants in this case, the government maintains that its effort to do so was well-founded and made in good faith. Defendant Bernard Smith was detained as both a risk of flight and a danger to the community based upon the facts of the case as presented to Magistrate Judge Snow during the pretrial detention hearing. During this hearing, the defendant had ample opportunity to cross-examine Special Agent Thompson about the strength of the government's case. The facts as presented to Magistrate Judge Snow were identical to those presented at trial. The defendant then appealed the decision of Judge Snow to this Court. The Court, after reviewing the transcript of the hearing, denied this appeal.

The defendant then filed a new motion for bond based upon his "passing" a polygraph examination. The defendant points to the polygraph as evidence of the government's bad faith in continuing this prosecution as the "government did not want to hear about it." Again, the defendant misstates the facts: the government did consider the results of the polygraph, but objected to their admissibility based on a number of factors, including the facts that the test involved only three questions and that the government was given no opportunity to be present for the test or have input into the terms or conditions of the test. While the Court released the defendant on a high corporate surety bond, the Court sustained the government's objections and did not permit the defendant to introduce the results of his polygraph at trial. The existence of the polygraph and the government's response to the polygraph are simply not evidence that the government continued this prosecution in bad faith. This is particularly true where at the time

that the polygraph was being administered, defense counsel was contacting the undersigned to discuss obtaining a plea agreement for his client.

With respect to the protective order which was obtained early in this litigation by the government, this order was sought in light of explicit threats which had been made to various government witnesses. Some of this testimony was introduced at trial, while other testimony, given evidentiary considerations, was not. The government has, throughout this investigation, conducted itself in a professional and ethical manner, always mindful of its obligations under the Federal Rules of Evidence and Criminal Procedure. The defendant's attempts to paint the government's seeking a protective order as further evidence of its recklessness in this case ignores the government's obligation to protect its witnesses from harm. Whether or not the defendant believes that the government was correct in doing this is irrelevant. A United States Magistrate Judge, when presented with the government's motion, granted the government's request. Indeed, the government maintains that this course of action was proper, particularly in light of the fact that one of the government's witnesses was the subject of a very explicit death threat approximately eight weeks before trial. As a result of this threat, this witness was forced to leave the area in which he was raised and had a family and seek refuge in another state. The government unabashedly stands by its decision to protect the well-being of those individuals who were assisting in this prosecution.

## CONCLUSION

The prosecution in this case was not successful. The verdict in and of itself, however, is an insufficient basis for an award of attorney's fees under the Hyde Amendment. It is the defendant's burden to prove that the government's prosecution was "vexatious, frivolous or in

bad faith." While the jury ultimately disagreed with the government's interpretation of the testimony and evidence, clearly there was sufficient probative evidence that compelled the Court to twice deny Rule 29 motions. As noted above, the Hyde Amendment was implemented to address the situation where the "government's position underlying the prosecution amounts to prosecutorial misconduct." The defendant simply has not and cannot meet his burden of proving such misconduct in this case and indeed, ignored any discussion of this burden in his petition. The government's prosecution, based upon the wiretap interceptions and testimony of witnesses, was neither frivolous nor vexatious and was at all times made in good faith.

WHEREFORE, the government respectfully requests that the defendant, Bernard Smith's petition for attorney's fees pursuant to the Hyde Amendment and 18 U.S.C. § 3006A be denied in its entirety.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____
KATHLEEN RICE
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 100765
500 East Broward Boulevard
Seventh Floor
Fort Lauderdale, Florida 33394
Tel: (954) 356-7255, ext. 3512
Fax: (954) 356-7336

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered by United States mail this 29th day of October, 2001, to: Richard Diaz, Esquire, 2701 Southwest 3rd Avenue, Miami, Florida 33129-2335.

_____
KATHLEEN RICE
ASSISTANT UNITED STATES ATTORNEY