UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Case No. 00-6162-Cr-Roettger /Snow

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BERNARD SMITH, et al.

    Defendants.
_____/



### DEFENDANT, BERNARD SMITH'S, REPLY TO GOVERNMENT'S RESPONSE TO BERNARD SMITH 'S PETITION FOR ATTORNEY'S FEES UNDER THE HYDE AMENDMENT

### Room Bug Surveillance

1.    The government first responds by saying that Bernard Smith is wrong when he claims that there were "several months" of room bug surveillance, when, it was in position for "about only one month" (Gov. Resp. pp. 4). That argument is clearly nothing but a red herring. It is a distinction without a difference on the issue.

### Intercepted Recorded Telephone Calls

2.    The government then claims that Bernard fails to address the merits, of any of the intercepted telephone conversations in his petition (Gov. Resp. pp. 5). We didn't think we had to since they were all addressed at trial. In any event,



1

we address those here again. In one conversation, Bernard is talking with Willie Walker in a non-incriminating conversation. Willie Walker tells Bernard that his brother Barry Smith is upset because he is not making enough money as a sub-contracted driver to Bernard Smith. Bernard tells Willie Walker that he's faxed applications for work but cannot force people to hire the truck for Barry to run. In a second non-incriminating conversation, Alex Rainey is talking to Bernard, and, at the end of the conversation, says that Sam had given Alex "some clothes" for Bernard. Alex Rainey <u>never</u> testified at trial. The government's "guess" that "clothes" meant "drug money" is as good a guessing in what Afghan cave Osama Bin Laden is hiding. In a third and fourth conversation, Bernard is talking about a recent (September 24, 1999) law enforcement raid at a house in the neighborhood and wondering whether it has any relation to a contemporaneous visit by two FBI agents at the Barry Smith warehouse - nothing incriminating there. In sum, none of these recorded telephone conversations revealed any incriminating conversation, keeping in mind that they were "the greatest hits" out of almost 4,000 calls involving Bernard.

### "Witness" Testimony

3. The Government then argues that there was testimony by the confidential source (Ansel Pratt) and "cooperating witness<u>es</u> and co-defendant<u>s</u>". (Gov. Resp. pp. 5). This is not accurate. There was only <u>one</u> cooperating witness that testified against Bernard (Jose Reyes), and, only <u>one</u> cooperating co-defendant that testified against Bernard (Sam Jones) – not several of each (as the

2

government incorrectly suggests). In any event, this Court was in the best position to evaluate the credibility of those witnesses. All Jose Reyes said was "Bernard Smith oversaw drug trafficking activities in North Carolina." Anybody can say that. There was no credible corroboration whatsoever for that statement, no dates, no specific events and no details. Sam Jones made it clear that Bernard was not involved in cocaine distribution. He did say three things however, about Bernard. One, that on one occasion he gave Bernard about $10,000.00 (in cash) in North Carolina to take to Barry Smith in Miami – but he never told Bernard that the money came from drugs. Two, he gave about $12,000.00 (in cash) to Bernard under this same scenario – but then again, no mention was made that the money came from drugs. Third, that on one occasion, Bernard asked Sam Jones if he (Sam) knew of somebody looking to buy a pound of marijuana. This case did not charge a marijuana[1] conspiracy or distribution, even if one is to believe Sam Jones.

### Corraborative Evidence

4. The government then loosely argues that all of this evidence corroborates each other. (Gov. Resp. p.p. 5) That is simply incorrect. The telephone conversations clearly showed that there was no drug conspiracy. The room bug and the 138 video tapes also showed no drug conspiracy. The testimony of the "cooperating" witness (Jose Reyes), the "co-operating" co-defendant (Sam Jones) and Ansel Pratt, as between themselves, was entirely inconsistent. The

---

[1] Hardly a drug trafficking amount.

credibility of Sam Jones, Ansel Pratt and the cooperating witnesses (the snitches) was sliced, diced and then shredded.[2] The government's star witness, its cooperating source, Ansel Pratt, was, treating him kindly, nothing more than a circus clown.

### Rule 29 Denial

5.  The fact that the Court denied Bernard's two Rule 29 Motions, is not dispositive of the issue either. (Gov. Resp. p.p. 5). Undersigned counsel was (unfortunately) not present for the verdict. This Court, however, apparently made certain statements, after the verdict, and no doubt, being somewhat influenced by the less that one hour deliberation period, that could be interpreted to mean that the Court thought the prosecution was baseless.

It is very important to note here that Hyde Amendment does not require that a prosecution be vexatious <u>and</u> frivolous <u>and</u> in bad faith, as the government seems to believe. It is drafted in the disjunctive. In other words, if a prosecution is vexatious, <u>or</u> in bad faith, <u>or</u> frivolous, then an order of attorney's fees can be awarded.

### Bernard's Testimony

6.  The government next argues that Bernard contradicted himself on the stand. (Gov. Resp. pp. 5-6), in that at one time he said he was running frequent trips from Hollywood to Jacksonville, and later he said he was running

---

[2] For example, Sam Jones said there never was any drugs or nay drug money stored, delivered to or from, or counted at the Barry Smith warehouse. Ansel Pratt said quite the opposite.

4

infrequent trips from Hollywood to Jacksonville. Again, this is incorrect. Bernard testified that the number of routes he ran from Hollywood to Jacksonville was X, but it was less than X that during the summer months of 1999 because his child was out of school and he preferred to make the shorter runs. And, if Bernard was not believed – why then was he was acquitted? Does the government have no respect for, or understand the import of a forty (40) minute not guilty verdict – across the board – all defendants – all counts – after a four week trial?

### Law Enforcement Favors

7. The government argues the evidence that Bernard used law enforcement for personal favors. (Gov. Resp. pp. 5). There is no crime in calling a police officer friend and asking him/her to circuitously provide one with information, which is public information, in and of itself. Several law enforcement personnel testified at trial that this would not be a crime, nor would it subject the police officer to discipline. In short, there was no evidence that Bernard criminally or corruptly used law enforcement contacts to obtain publicly available information.

### Sam Jones' Telephone Call

8. The government then focuses on a specific recorded telephone call[3] in an attempt to mislead this Court by saying that Sam Jones and Bernard "discuss who could be informing law enforcement about their drug activity (gov. Ex

---

[3] One of the calls on September 24, 1999 referred to in section 2 of this reply.

7/7a)". (Gov. Resp. pp. 5-6). False. <u>Nowhere</u> in that conversation is the word "drug", "activity" or "drug activity" used. While the government has a vivid, creative and extrapolating imagination, the text of the conversation – <u>the actual text</u> – reveals no mention of "drug" or "drug activity".

<u>**Bernard Hires Attorney**</u>

9.    The government then incredibly says that Bernard must be guilty because he contacted an attorney before the September 24, 1999, law enforcement approach. (Gov. Resp. pp. 6). The government just doesn't get it. Bernard suspected a federal investigation was going on around him, and he knew he had done nothing wrong. He, himself, experienced a vexatious, malicious and false prosecution by this same US Attorney's Office ten years ago, and proved his actual innocence in an uncontroverted, total mistake in identity. Having gone through that baseless and malicious prosecution, he had every reason in the world to contact an attorney when he thought the same might happen to him again. And, he was right. And, again, he was acquitted. The government really doesn't get it. It's called the Fifth and Sixth Amendments of the United States Constitution. The Constitution protects PEOPLE, innocent and guilty alike.

<u>**Incriminating Evidence – Not Used at Trial**</u>

10.    In an unbelievable fashion, the government says that it elected not to play other telephone calls demonstrating that the Smith brothers were involved in drug activity. (Gov. Resp. pp.6). The government has got to be kidding on this one. This Court can rest assured that if those tapes really existed, not with the

government's twisted interpretation of them, but what the content <u>really is</u>, we would have certainly heard them in trial. Why would the government withhold its strongest evidence? It makes no sense because those tapes don't exist.

### Barry Smith's State of Mind must equal Bernard's because they are Brothers

11. The government argues that just because Barry Smith understood the word "clothes" to mean "money" (or "drug money"), that necessarily, that was Bernard's understanding as well, even when said, <u>not by Barry Smith</u>, but by some other person (Alex Railey). Barry Smith is not Bernard and vice versa. Different words have different meanings to different people – yes, even "code" words.

### Barry Smith's "Confession"

12. The government criticizes that Bernard did not oppose the interrogation and "confession" of Barry Smith. (Gov. Resp. pp.8). There is a concept called standing, on these types of motions.

### Willie Walker

13. The government then expresses its "puzzlement" that Willie Walker's indictment is mentioned by Bernard in his petition. (Gov. Resp. pp.8). The answer is that it is an element of the <u>case</u> prosecution, which is a factor supporting our position that this prosecution was vexatious, <u>or</u> frivolous, <u>or</u> in bad faith.

### FDC Taped Telephone Call- Vendetta

14.  The government disavows Bernard's claim that the government has expressed an interest in pursuing Bernard any further. (Gov. Resp. p.p. 9). The FDC tape will reveal whether the government's claim is correct in that regard.

### Pretrial Detention Proffer

15.  The government then claims the pretrial detention hearing proffer was not in bad faith. (Gov. Resp. p.p. 9). This Court knows that not to be true. This is evidenced by the Court's comments after the jury returned its verdict to the effect that had the Court known the true import of the government's evidence in this case – it would have granted bond to the defendants. Enough said.

### Polygraph Test

16.  The government then brushes off the polygraph test Bernard passed (Gov. Resp. pp 9). The polygraph test, while not perfect, is scientific and more credible than a paid informer like Ansel Pratt, or a "lifer" looking for a "get out of jail early pass" from a government prosecutor - particularly, a robber, kidnapper, rapist – multiple convicted felon, one who threatens to assault or kill a law enforcement officer and, an admitted drug trafficker.

The government knows Slattery & Associates and its credentials. The government knows that polygraphs are about 87% reliable. The government saw the test Question: "Have you ever agreed or participated with anybody, from 1996 to 1999 to possess or distribute cocaine. Answer: "No." Result: truthful –

8

what more do you need? That was the government's charge in the indictment – that was the question – Bernard's denial was 87% scientifically truthful.

### The Protective Order

17.   The government's valiant attempt to justify its protective order falls miserably short. Most of the government were in federal prison, Michael Haynes, Jose Reyes and Tim Wimberly (if that's his real name). The government's allegation that eight weeks before trial, a government witness experienced a death threat is ridiculous, unbelievable and misses the point.

First, if such evidence really existed (in a credible manner), Willie Walker and Bernard's pretrial release bonds probably would have been revoked. Second, the protective order was sought and obtained a year before that threat – the government is not a prophet! Third, many of the "protected" government witnesses, upon information and belief, were not even a part of the initial protective order, because they did not become government witnesses in this prosecution until <u>after</u> the protective order was issued.

### CONCLUSION

The government's response tries to take the Court's eye off the issue. The government clearly took a shotgun approach to this prosecution. The government never second-guessed its witnesses or evidence. It ignored Bernard's polygraph. It stubbornly blinded itself and rolled the dice with the prosecution.

Vexatious means viciousness. Frivolous means without merit. Bad faith means with a bad or improper motive. If this Court finds that the prosecution was any one of the above, an award of attorney's fees is proper.

Respectfully submitted,

Richard J. Diaz
F.B.N. 0767697
2701 S.W. 3rd Avenue
Miami, FL 33129
Telephone: (305) 285-1122
Facsimile: (305) 285-0354
E-mail: rick@rjdpa.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 7th day of November 2001 to Assistant U.S. Attorney, Kathleen Rice, 500 E. Broward Blvd., Seventh Floor, Ft. Lauderdale, FL 33394.

Richard J. Diaz, Esq.